**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

PATRICK COLLINS, INC., and THIRD
DEGREE FILMS,

      Plaintiffs,

v.

KHALID BOUSSETTA, and ERIC
RATLIFF,

      Defendants.

_____/

**COMPLAINT**

Plaintiffs, Patrick Collins, Inc. and Third Degree Films ("Plaintiffs"), for its complaint against Khalid Boussetta and Eric Ratliff ("Defendant"), allege as follows:

**Introduction**

1.      This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"), and the Lanham Act, as amended, 15 U.S.C. §§ 1051 et seq.

2.      Through this suit, Plaintiffs allege each Defendant is liable for:

• Direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501;

• Contributory copyright infringement;

• Direct trademark infringement under 15 U.S.C. §§ 1114(1) and 1125(a); and

• Contributory trademark infringement.

**Jurisdiction And Venue**

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

4.      As set forth on Exhibit A, each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over each Defendant because each Defendant committed the tortious conduct alleged in this Complaint in the District of Colorado, and (a) each Defendant resides in the District of Colorado, and/or (b) each Defendant has engaged in continuous and systematic business activity, or has contracted anywhere to supply goods or services in the District of Colorado.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) a Defendant resides (and therefore can be found) in this District and all of the Defendants reside in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because each Defendant or each Defendant's agent resides or may be found in this District.

## Parties

6.      Plaintiff, Patrick Collins, Inc., is a corporation organized and existing under the laws of the State of California and has its principal place of business located at 8015 Deering Avenue, Canoga Park, CA 91304.

7.      Plaintiff, Third Degree Films, is a corporation organized and existing under the laws of the State of California and has its principal place of business located at 9035 Independence Avenue, Canoga Park, CA 91304.

8.      Defendant, Khalid Boussetta is an individual who resides in the state of Colorado.  Defendant's IP address is 24.8.170.219.

9.      Defendant, Eric Ratliff, is an individual who resides in the state of Colorado. Defendant's IP address is 67.190.79.70.

10.      An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.

11.     The ISP to which Defendants subscribe can correlate the Defendant's IP address to the Defendants' true identities.

**Factual Background**

I.      *Plaintiffs Own the Copyright to a Motion Picture*

12.     Plaintiff, Patrick Collins, Inc., is the owner of United States Copyright Registration Number PA0001751688 (the "Registration") for the motion picture entitled "Big Wet Asses 19" (the "Work"), which was registered on or about August 26, 2011.  A copy of the internet screen shot from the U.S. Copyright Office's website evidencing, among other things, Plaintiffs' ownership of the Registration and the registration date is attached as Exhibit B.

13.     Plaintiff, Third Degree Films, submitted an application for Copyright Registration for the motion picture titled "The Art of Anal #2" (the "Work").

II.     *Defendants Used BitTorrent To Infringe Plaintiffs' Copyrights*

14.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users using the BitTorrent protocol on the internet account for over a quarter of all internet traffic.  The creators and user's of BitTorrent developed their own lexicon for use when talking about BitTorrent, which can be found on www.Wikipedia.org.

15.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network.  In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

A.      *Defendants Installed a BitTorrent Client onto Their Computers*

16.     Defendants installed a BitTorrent Client onto their computers.

17.     A BitTorrent "Client" is a software program that implements the BitTorent protocol.  There are numerous such software programs including µTorrent and Vuze, both of which can be directly downloaded from the internet.  See www.utorrent.com and http://new.vuze-downloads.com/.

18.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

B.     *The Initial Seed, Torrent, Hash and Tracker*

19.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

20.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into groups of bits known as "pieces."

21.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

22.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free.  In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

23.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

24.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

25.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Works, on them and facilitates the exchange of data among the computers.

26.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

C.     *Torrent Sites*

27.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.   There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, and www.ExtraTorrent.com.

28.     Upon information and belief, Defendants went to a torrent site to upload and download Plaintiffs' copyrighted Works.

D.     *Uploading and Downloading a Work Through a BitTorrent Swarm*

29.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

30.     The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Works, to the peers seeking to download the computer file.

31.     Once a peer receives a piece of the computer file, here a piece of the Copyrighted Works, it starts transmitting that piece to the other peers.

32.     In this way, all of the peers and seeders are working together in what is called a "swarm."

33.     Here, each Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

34.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers.  The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

35.     Once a peer, here each Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie.  Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed" because it continues to distribute the torrent file, here the copyrighted Works.

E.     *Plaintiffs' Computer Investigators Identified Each Defendant's IP Addresses as an Infringer in a Swarm That Was Distributing Plaintiffs' Works*

36.     Plaintiffs retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' copyrighted Works.

37.     IPP used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-to-peer network for the presence of infringing transactions.

38.     IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the torrent file identified by the SHA-1 hash value of E776C99EB5DA83A6F678A5EFCC36CBFB9F87680F, for the Work "Big Wet Asses 19," and the SHA-1 hash value of EBF73B0C5A39562D309085EAFB565719BE0B2D91, for the Work "The Art of Anal #2" ("Unique Hash Numbers").

39.     The IP addresses, Unique Hash Number and hit dates contained on Exhibit A accurately reflect what is contained in the evidence logs, and show:

(A)     Each Defendant had copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number; and

(B)     Therefore, each Defendant was part of the same series of transactions.

40.     Through the transaction(s), each of the Defendant's computers used their respective IP address to connect to the investigative server from a computer in this District in order to transmit full copies, or portions thereof, of digital media files identified by the Unique Hash Numbers.

41.     IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of the piece(s) using a BitTorrent Client results in fully playable digital motion pictures of the Works.

42.     IPP's agent viewed the Works side-by-side with the digital media files that correlate to the Unique Hash Numbers and determined that they were identical, strikingly similar or substantially similar.

### Miscellaneous

43.     All conditions precedent to bringing this action have occurred or been waived.

44.     Plaintiffs have retained counsel and are obligated to pay said counsel a reasonable fee for its services.

### COUNT I
### Direct Infringement Against Defendant

45.     The allegations contained in paragraphs 1-44 are hereby re-alleged as if fully set forth herein.

46.     Plaintiffs are the owners of the copyrights for the Works, each of which contains an original work of authorship.

47.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied one or more of the constituent elements of the Works that are original.

48.     Plaintiffs did not authorize, permit or consent to Defendants' copying of their Works.

49.     As a result of the foregoing, each Defendant violated Plaintiffs' exclusive right to:

(A)     Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works audible and transmitting said performance of the Works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)     Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works nonsequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

50.     Each of the Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

51.     Plaintiffs have suffered actual damages that were proximately caused by each of the Defendant's infringements, including lost sales, price erosion and a diminution of the value of its copyright.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)     Permanently enjoin each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted

Work;

(B)    Order that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody or control;

(C)    Order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under Defendant's possession, custody or control;

(D)    Award Plaintiffs either their actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b); or statutory damages in the amount of $150,000 pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E)    Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)    Grant Plaintiffs any other and further relief this Court deems just and proper.

## COUNT II
### Contributory Infringement Against Defendants

52.    The allegations contained in paragraphs 1-44 are hereby re-alleged as if fully set forth herein.

53.    Plaintiffs are the owners of the copyrights for the Works, each of which contains an original work of authorship.

54.    By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the Works that are original.

55.    By participating in the BitTorrent swarm with other infringers, the Defendant induced, caused or materially contributed to the infringing conduct of the other peer infringers in the swarm.

56.    Plaintiffs did not authorize, permit or consent to Defendants' inducing, causing or materially contributing to the infringing conduct of other peer infringers.

57.     Each Defendant knew or should have known that other BitTorrent users, here the other Defendants, would become members of a swarm with Defendant.

58.     Each Defendant knew or should have known that other BitTorrent users in a swarm with it, here the other Defendants, were directly infringing Plaintiffs' copyrighted Works by copying one or more of the constituent elements of the copyrighted Works that are original.

59.     Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendant's infringing activities.

60.     Each of the Defendant's contributory infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

61.     Plaintiffs have suffered actual damages that were proximately caused by each of the Defendants including lost sales, price erosion, and a diminution of the value of its copyrights.

(A)     Permanently enjoin each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)     Order that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody or control;

(C)     Order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under Defendant's possession, custody or control;

(D)     Find that each Defendant is jointly and severally liable for the direct infringement of each other Defendant;

(E)     Award Plaintiffs either their actual damages and any additional profits made by Defendant pursuant to 17 U.S.C. § 504-(a)-(b); or statutory damages in the amount of $150,000 pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(F)     Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C.

§ 505; and

(G)     Grant Plaintiffs any other and further relief this Court deems just and proper.

**COUNT III**
**Direct Trademark Infringement Against Defendants**

62.     The allegations contained in paragraphs 1-61 are hereby re-alleged as if fully set forth herein.

63.     Plaintiff, Patrick Collins, Inc., is the owner of the trademark ELEGANT ANGEL and its corresponding federal registration.

64.     Plaintiff, Third Degree Films, is the owner of the trademark THIRD DEGREE FILMS and its corresponding federal registration.

65.     Defendants' unauthorized use and reproduction in commerce of the marks ELEGANT ANGEL, and THIRD DEGREE FILMS, and/or variations thereof, is likely to cause confusion, mistake or deception of consumers as to the source or origin of Plaintiffs' goods, services or commercial activities, or lead consumers to mistakenly believe that Plaintiffs' sponsors approves of or is affiliated with Defendants or their goods, services or commercial activities.

66.     As a result of each Defendant's infringements, consumers are likely to purchase Defendants' goods or services, or patronize Defendants' commercial activities, mistakenly believing them to be those of the Plaintiffs.

67.     Plaintiffs cannot control the nature and quality of the goods, services or commercial activities offered by the Defendants, and any failure, neglect or default by the Defendants in providing same will and does reflect adversely on Plaintiffs as their believed source or origin, thus hampering efforts by Plaintiffs to protect their reputations, and resulting in loss of sales, a diminution in Plaintiffs' reputations, and/or the need for considerable expenditures to promote their goods, services or commercial activities under their marks, all to the irreparable harm of Plaintiff.

68.    Plaintiffs' damages are continuing, and additional injury and damage to Plaintiff will continue to occur so long as each Defendant's above alleged unauthorized and infringing uses persist.

69.    Each of the Defendant's infringement is willful and deliberate, has resulted in gains, profits and advantages to the Defendants, and is designed specifically to trade upon the enormous goodwill associated with the ELEGANT ANGEL and THIRD DEGREE FILMS marks.

70.    Defendant's infringement constitutes a violation of 15 U.S.C. § 1114(1), and will continue unless enjoined by this Court.

71.    Plaintiffs do not have an adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)    Permanently enjoin each Defendant and all other persons who are in active concert or participation with Defendants from continuing their unauthorized and misleading use of Plaintiffs' trademarks;

(B)    Order that each Defendant delete and permanently remove the torrent file relating to Plaintiffs' trademarks from each of the computers under Defendants' possession, custody or control;

(C)    Order that each Defendant delete and permanently remove the copies of the Works Defendants have on the computers under Defendants' possession, custody or control;

(D)    Ordering Defendants to prepare and file with the Court and serve on Plaintiffs a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Court's judgment;

(E)    Ordering that an accounting be made of the profits each Defendant has wrongfully obtained from his or her use of the ELEGANT ANGEL and THIRD DEGREE FILMS marks, or any variation thereof;

(F)    Awarding Plaintiffs three times such profits or Plaintiffs'' damages, whichever amount is greater;

(G)    Awarding Plaintiffs compensatory damages under 15 U.S.C. § 1117;

(H)    Awarding Plaintiffs statutory damages under 15 U.S.C. § 1117;

(I)    Awarding Plaintiffs their attorneys' fees and costs incurred in this action under 15 U.S.C. § 1117;

(J)    Granting Plaintiffs' such other and further relief as the Court deems just and proper.

## COUNT IV
## Contributory Trademark Infringement Against Defendants

72.    The allegations contained in paragraphs 1-44 are hereby re-alleged as if fully set forth herein.

73.    The actions of the Defendants above, and specifically, their participation and inducement in the distribution of torrent files containing the ELEGANT ANGEL and THIRD DEGREE FILMS trademarks to those whom Defendants knows or has reason to know is engaging in trademark infringement, constitute contributory trademark infringement in violation of federal law.

74.    Each act of contributory trademark infringement has resulted in loss of sales, a diminution in Plaintiffs' reputations, and/or the need for considerable expenditures to promote their goods, services or commercial activities under their marks, all to the irreparable harm of Plaintiff.

75.    Plaintiffs' damages are continuing, and additional injury and damage to Plaintiff will continue to occur so long as Defendants' above alleged unauthorized and infringing uses persists.

76.    Each of the Defendant's contributory infringements are willful and deliberate, have resulted in gains, profits and advantages to Defendant, and are designed specifically to trade upon the goodwill associated with the ELEGANT ANGEL and THIRD DEGREE marks.

77.    Plaintiffs do not have an adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)     Permanently enjoin each Defendant and all other persons who are in active concert or participation with Defendants from continuing their unauthorized and misleading use of Plaintiffs' trademarks;

(B)     Order that each Defendant delete and permanently remove the torrent file relating to Plaintiffs' trademarks from each of the computers under such Defendant's possession, custody or control;

(C)     Order that each Defendant delete and permanently remove the copies of the Works Defendant has on the computers under Defendant's possession, custody or control;

(D)     Find that each Defendant is jointly and severally liable for the unauthorized and misleading use of each other infringer;

(E)     Award Plaintiffs damages and their attorneys' fees and costs incurred in this action; and

(F)     Grant Plaintiffs any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,
By: /s/Jason Kotzker
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
Attorney for Plaintiff

Dated April 4, 2012